IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMARETTO RANCH BREEDABLES,<br><br>    Plaintiff,<br><br>v.<br><br>OZIMALS, INC,<br><br>    Defendant. | No. C 10-05696 CRB<br><br>**TEMPORARY RESTRAINING ORDER** |

Linden Research Incorporated, and all persons in active concert or participation with Linden Research, are hereby TEMPORARILY RESTRAINED from taking down from Second Life Plaintiff Amaretto Ranch Breedables ("Plaintiff") Amaretto's Horse Product Line. This Temporary Restraining Order shall remain in effect until this Court rules on Plaintiff's Motion for a Preliminary Injunction. The hearing on that Motion will be January 11, 2011, at 1:00 p.m.[1]

## I. BACKGROUND

Plaintiff filed a suit in this Court and seeks, among other things, a temporary restraining order and preliminary injunction barring Linden Research, the operator of Second Life, from removing Plaintiff's virtual products as a result of a Digital Millennium Copy Act ("DMCA") Takedown Notification filed by Defendant Ozimals, Inc. Plaintiff asserts that Defendant's DMCA was wrongfully filed pursuant to 17 U.S.C. § 512(f). The gist of the copyright dispute between the parties is whether Plaintiff's virtual horses infringe on copyrights associated with Defendant's virtual bunnies.

---

[1] The Court's calender requires moving the hearing from its originally scheduled date and time. The briefing schedule is as follows:

- Plaintiff's Brief is due December 28, 2010.
- Defendant's Opposition is due January 6, 2011.
- Plaintiff's Reply is due January 10, 2011.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Defense Council, Inc., – U.S. –, 129 S. Ct. 365, 674 (2008). "In Winter, the Supreme Court disagreed with one aspect of [the Ninth Circuit's] approach to preliminary injunctions." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010). Specifically, Winter rejected the Ninth Circuit's approach under which, in some circumstances, a party seeking a preliminary injunction had only to show a "possibility" of irreparable harm. Winter makes clear that the party seeking a preliminary injunction must show that irreparable harm is "likely." Id. at 1050.

Notwithstanding Winter, the Ninth Circuit has reaffirmed that "the 'serious questions' approach survives Winter when applied as part of the four-element Winter test. In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id.

## III. DISCUSSION

### A. Threshold Issues[2]

#### 1. Jurisdiction

This Court concludes on the record presently before it that it has at least specific personal jurisdiction over Defendant in connection with Plaintiff's section 512 claim. Defendant filed a DMCA Takedown Notification with a California company regarding another California company. That Notification is at issue. See YAHOO! Inc. v. La Ligue Centre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-1206 (9th Cir. 2006); Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008).

//

---

[2] Defendant is free to readdress any or all of these threshold issues at the preliminary injunction hearing.

2

### 2. First to File

It appears to the Court that the first to file rule does not bar Plaintiff's action. A lawsuit raising a section 512(f) claim is not anticipatory to a copyright infringement action. Defendant chose to lodge a DMCA Takedown Notification rather than first (or simultaneously) filing an infringement lawsuit. By doing so, it ran the risk that Plaintiff would sue pursuant to section 512(f) and argue that the Notification was improper. Moreover, courts within this district have already treated section 512(f) claims as viable stand-alone causes of action. See generally Lenz v. Universal Music Corp., No. C 07-3783 JF, 2010 WL 702466 (N.D. Cal. Feb. 25, 2010) (discussing complaint in which plaintiff asserted "only a claim for misrepresentation pursuant to 17 U.S.C. § 512(f)."). Thus, Plaintiff's suit, which among things asserts a section 512(f) claim, does not appear similar to those in which courts have declined to exercise jurisdiction under the Declaratory Judgment Act because parties were merely seeking to get out in front of an anticipated infringement action.

### 3. Noerr-Pennington Doctrine

Nor does the Noerr-Pennington Doctrine appear to prevent the issuance of a temporary restraining order here. The filing of a DMCA Takedown Notification is not an offer of settlement or necessarily a pre-suit step to the bringing of an infringement action. Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006).

## B. Temporary Restraining Order Analysis[3]

### 1. Likelihood of Success of the Merits: 17 U.S.C. § 512(f) Claim[4]

Section 512(f) provides in part as follows:

> Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall

---

[3] The Court recognizes that Defendant has had a limited opportunity, given the shortened timetable, to present its merits arguments in opposition to the issuance of injunctive relief. Defendant will have a complete opportunity to challenge these determinations at the preliminary injunction hearing.

[4] The Complaint asserts claims in addition to the one under 17 U.S.C. § 512(f) for wrongfully filing a DMCA Notification. However, the Memorandum in Support of the Motion for a Temporary Restraining Order only discusses likelihood of success as to the section 512 claim.

3

> be liable for any damages . . . incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider . . . removing or disabling access to the material or activity claimed to be infringing.

17 U.S.C. § 512(f).

Plaintiff has at least raised serious questions going to the merits of its section 512(f) claim. This is because software copyright protection does not apply to functionality. See 17 U.S.C. § 102(b). Thus, even if Defendant was the first to come up with a virtual animal that requires "food" to "live," any copyright it has does not prevent another company from marketing virtual animals with similar traits provided, essentially, that that company did not copy Defendant's programming. Because, among other things, Plaintiff has submitted Declarations supporting the conclusion that it did not copy or otherwise "steal" Defendant's code (and that Defendant knew this to be true when it filed the DMCA Takedown Notification), Plaintiff has raised serious questions as to whether Defendant "materially misrepresen[ed]" that Plaintiff's virtual horse product line infringes Defendant's copyright(s).

### 2. Irreparable Harm

Plaintiff has also established a likelihood of irreparable harm if Second Life complies with the DMCA Takedown Notification. See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (reputational harm and loss of good will can be irreparable harm). Plaintiff also points out that this is a prime buying season, and if its product disappears (or if its marketability is dramatically affected) it will likely permanently lose prospective customers See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001).

### 3. Balance of Hardships

The balance of hardships also tips in favor of Plaintiff. If the injunction is not issued Plaintiff will suffer harm to its business that could be severe enough to impact its ability to continue as a going concern. On the contrary, if Plaintiff is allowed to continue to market and sell its products as it currently does, Defendant can obtain money damages from Plaintiff if Plaintiff is in fact infringing Defendant's copyright.

4

### 4. Public Interest

The public interest portion of the preliminary injunction test asks "whether there exists some critical public interest that would be injured by the grant of preliminary relief." Independent. Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009) (quoting Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1458 (Fed. Cir. 1988)). Here, there is no identifiable public interest that will be negatively effected by granting Plaintiff preliminary relief.

## IV. CONCLUSION

Linden Research, and all persons in active concert or participation with Linden Research, are temporarily restrained from taking down from Second Life Plaintiff's Horse Product Line. This temporary restraint is effectively immediately and shall remain in effect until this Court rules on Plaintiff's Motion for a Preliminary Injunction. Plaintiff shall post a bond of $25,000 by Monday, December 28, 2010 at 4:00 p.m. The bond shall be filed with the Clerk's Office and be deposited into the registry of the Court. If said bond is not posted by the aforementioned date, this temporary restraining order shall be dissolved.

**IT IS SO ORDERED.**

Dated: December 21, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2010\5696\Temporary Restraining Order.wpd       5