STEPHEN S. WU (SBN 205091)
COOKE KOBRICK & WU LLP
166 Main Street
Los Altos, CA 94022
Email: swu@ckwlaw.com
Tel: (650) 917-8045
Fax: (650) 618-1454

PAUL M. SYKES (*Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Email: psykes@babc.com
Tel: (205) 521-8766
Fax: (205) 488-6766

Attorney for Defendants
Ozimals, Inc. and Candace Sargent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMARETTO RANCH BREEDABLES, LLC, a California Limited Liability Company<br><br>Plaintiff,<br><br>vs.<br><br>OZIMALS, INC., an Alabama corporation,<br><br>Defendant. | Case No.: C-10-05696 CRB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION**<br><br>Date:             April 22, 2011<br>Time:             8:30 A.M.<br>Judge:            Hon. Charles R. Breyer<br>Courtroom:    8, 19th Floor<br>Complaint Filed: December 15, 2010 |

1

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 22, 2011, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 8 of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Ozimals, Inc. ("Ozimals") and Defendant Candace Sargent will and do hereby move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Second, Third, Fourth, and Fifth Causes of Action of Plaintiff's First Amended Complaint for failure to state a claim upon which relief may be granted.

Plaintiff's Second Cause of Action for misrepresentation under 17 U.S.C. § 512(f) fails, because Plaintiff has not alleged that any takedown notice from Ozimals resulted in any actual takedown or any harm following a takedown. Furthermore, the litigation privilege in California Civil Code Section 47 bars Plaintiff's Second through Fifth Causes of Action based on the takedown notice, the filing of a complaint in Alabama and related claims arising from alleged communications about it with the Second Life community. Moreover, Plaintiff's blanket allegation that unspecified alleged Ozimals' communications with an unidentified group of third parties fails to state a claim for tortious interference with prospective business advantage or the related claim of unfair competition. It also fails to comply with Fed. R. Civ. P. 9(b). Accordingly, the Third (Common Law Tortious Interference with Prospective Business Advantage) and Fourth (Unfair Competition – California Business and Professions Code § 17200 *et seq.* and at Common Law) Causes of Action fail. The Fifth Cause of Action is ostensibly for copyright misuse. Copyright misuse, however, is an affirmative defense, not a claim.

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, arguments of counsel, the pleadings and records on file in this case, and such other matters of which the Court may take judicial notice.

# MEMORANDUM AND POINTS OF AUTHORITIES

## I.     INTRODUCTION

Plaintiff Amaretto Ranch Breedables, LLC ("Amaretto") has now tried twice to state claims for misrepresentation under 17 U.S.C. § 512(f), copyright misuse, and related state claims. Its second try is no better than the first.

In its First Amended Complaint ("FAC"), filed on February 9, 2011. Amaretto alleges that it has suffered harm because Ozimals wrongfully sent a "takedown notification" under the Digital Millennium Copyright Act (DMCA) to non-party Linden Research, Inc. ("Linden Lab"). The DMCA expressly provides a cause of action to alleged infringers against copyright owners that make knowing material misrepresentations in takedown notices. *See* 17 U.S.C. § 512(f). Nonetheless, Section 512(f) provides a remedy only for damages that result from the service provider relying on the alleged misrepresentation and actually removing or disabling access to it. While Plaintiff pled a claim under Section 512(f) (the Second Cause of Action), Plaintiff has not alleged that Linden Lab actually removed or disabled access to its material. Indeed, Amaretto cannot, because, as admitted by Plaintiff, Ozimals withdrew its takedown notices before Linden Lab took any action in response to its notices. Without an actual removal, Plaintiff's misrepresentation claim fails.

Plaintiff also contends that unspecified communications by Ozimals with unspecified third-party members of Second Life (exclusive of the takedown notices) allegedly caused lost sales and constituted tortious interference with prospective business advantage and unfair competition (the Third and Fourth Causes of Action). Plaintiff, however, failed to allege any actual negotiations or potential contracts that Ozimals allegedly disrupted. Under California law and Fed. R. Civ. P. 9(b), Plaintiff's allegations are insufficient to state a claim for tortious interference with prospective business advantage, and without a wrongful act in the form of such interference, Plaintiff has no claim for unfair competition. In addition, Plaintiff claims copyright misuse in its Fifth Cause of Action, even though misuse is a defense and not an affirmative claim. In any case, Plaintiff's claims for affirmative relief fail because California's litigation

1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S FIRST AMENDED COMPLAINT; MPA IN SUPPORT
Case No. C-10-05696 CRB

1 privilege permits Plaintiff to file litigation documents and then let the Second Life community
2 know about the litigation.
3     Accordingly, the Second, Third, Fourth, and Fifth Causes of Action must be dismissed.
4 Because Plaintiff has now failed twice to plead these claims, Ozimals requests that they be
5 dismissed with prejudice.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

(1) Whether Defendant has any liability under 17 U.S.C. § 512(f) for wrongful sending of a takedown notice under the DMCA when the content that was the subject of the notice was never taken down;

(2) Whether Cal. Civil Code Section 47's litigation privilege bars Plaintiff's claims for filing a federal complaint, discussing the litigation with the Second Life community, and submitting a DMCA takedown notice that did not result in a takedown;

(3) Whether the blanket allegation that unspecified alleged communication with an unidentified group of third parties concerning Plaintiff's infringing conduct states a claim for tortious interference with contract or prospective economic advantage or unfair competition in the absence of any allegation of an actual disruption to negotiations or potential contracts;

(4) Whether Fed. R. Civ. P. 9(b) requires Plaintiff to plead allegedly fraudulent statements with particularity in its claims for tortious interference with prospective economic relations and unfair competition; and

(5) Whether "copyright misuse" is a cause of action, or is merely an affirmative defense.

## III.  STATEMENT OF FACTS

On November 2, 2010, Ozimals sent Amaretto a cease-and-desist letter, alleging that Amaretto's software infringed Ozimals' copyright in its software. (FAC (Doc. 68), ¶ 23.) On December 1, 2010, Ozimals sent a takedown notice under the DMCA to Linden Lab in which Ozimals identified certain software sold by Amaretto as infringing and requested Linden Lab to take down the infringing material, in accordance with the DMCA. (*Id.* ¶ 27.)  Before Linden Lab removed or disabled access to the material, Amaretto filed this action seeking a temporary

restraining order, and preliminary and permanent injunctions, ostensibly under 17 U.S.C. § 512(f), to prohibit Linden Lab from acting on the notice and to enjoin Ozimals from sending additional or revised notices.  (*Id.* ¶ 30; *id.*, Prayer for Relief, ¶¶ A–B.)

As its Second Cause of Action, Amaretto seeks damages under Section 512(f) based upon Ozimals' sending the cease-and-desist letter and the takedown notice. (*Id.* ¶¶ 41-45.)  Noticeably absent, however, is any allegation that Linden Lab actually relied on any take down notice, or actually removed access to any of Plaintiff's products.   To the contrary, Plaintiff states that the Court issued a TRO enjoining Linden Lab from removing Amaretto's products, and later issued a preliminary injunction mandating that Ozimals withdraw its DMCA notices.  (*Id.* ¶ 32.)

In its Third Cause of Action, Amaretto seeks damages under the theory of common law tortious interference with prospective business advantage, based upon alleged misrepresentations contained in unspecified communications to unidentified members of Second Life that Plaintiff's products were infringing.  Plaintiff also alleged unspecified written and oral communications from Ozimals to unspecified recipients disparaging the quality of Plaintiff's products.  Plaintiff claims that unidentified customers purchased others' products instead of Plaintiff's. (*Id.* ¶¶ 47-49.)  This same conduct allegedly forms the basis for Plaintiff's Fourth Cause of Action, in which Amaretto seeks damages for unfair competition, both at common law and under California Business and Professions Code § 17200 *et seq.*. (*Id.* ¶¶ 51-54.)   In its Fifth Cause of Action, Amaretto purports to state a claim for "copyright misuse" under 17 U.S.C. § 102(b), based upon Ozimals filing its copyright suit in Alabama.  (*Id.* ¶¶ 30, 56-60.)

### IV.   LEGAL STANDARD

In  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court stated that to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [under Rule 8] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The plaintiff must allege "enough facts to state a claim to

3

1  relief that is plausible on its face." *Id.* at 570, 127 S. Ct. at 1974, and allegations of that raise a
2  mere "possibility" of relief are insufficient, *id.* at 557, 127 S. Ct. at 1966. The Supreme Court
3  confirmed that the standards it provided in *Twombly* apply to all civil actions in *Ashcroft v. Iqbal*,
4  __ U.S. __, 129 S. Ct. 1937, 1953 (2009). "Dismissal can be based on the lack of a cognizable
5  legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*
6  *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## V. ARGUMENT

### A. Plaintiff's Misrepresentation Claim Under 17 U.S.C. § 512(f) Fails Because Cease-and-Desist Letters Are Not Actionable Under Section 512(f), and Linden Lab Neither Relied on Ozimals' Takedown   Notice Nor Ever Removed Plaintiff's Products.

Plaintiff alleges that the November 2, 2010 cease-and-desist letter sent to Amaretto and the December 1, 2010 takedown notice to Linden Lab contained material misrepresentations and are therefore actionable under the Digital Millennium Copyright Act ("DMCA") and in particular, 17 U.S.C. § 512(f). (FAC ¶¶ 23, 27, 41-45.) Section 512(f) provides that a "person who knowingly materially misrepresents *under this section* . . . that material or activity is infringing" is liable for damages "as the result of the service provider *relying upon such misrepresentation* in *removing or disabling access to the material or activity* claimed to be infringing." 17 U.S.C. § 512(f) (emphasis added). Here, however, Plaintiff's claim fails for several reasons.

First, Section 512(f) provides no right of action based on a cease-and-desist letter. Section 512(f) provides a right of action only for misrepresentations made "under this section." The phrase "under this section" refers to statements made under Section 512 – either DMCA takedown notifications or counter notifications sent to a service provider. *Id.* § 512(c), (g). Section 512(f) provides no right of action for misrepresentations in communications to other parties, or in communications with service providers that do not constitute takedown or counter notifications. Thus, Plaintiff can make no claim for damages for a cease-and-desist letter that was not sent to the service provider Linden Lab. Even assuming the cease-and-desist letter were within the purview of Section 512(f), Plaintiff's claim with respect to the letter fails for

the same reason Plaintiff's claim fails with respect to the takedown notification: there was no takedown.

Specifically, neither the Ozimals' takedown notification nor the cease-and-desist letter can support a Section 512(f) claim, because Plaintiff fails to allege that Linden Lab relied on any misrepresentation or that Linden Lab removed or disabled access to any Amaretto products. Plaintiff alleges that Ozimals *sent* the notice, (FAC ¶ 27), but never claims that Linden Lab *acted on it*. If Linden Lab never acted on it, Linden Lab could not have relied on it. Indeed, the FAC says nothing about Linden Lab ever removing anything of Plaintiff's. To the contrary, Plaintiff filed suit, sought a TRO, received a TRO, and received a preliminary injunction both preventing Linden Lab from taking Amaretto products down and compelling Ozimals to withdraw its takedown notifications. (*Id.* ¶ 32.)

Given the Court's orders, no takedown occurred. Without a takedown, Linden Lab did not "remov[e] or disable[e] access to the material or activity claimed to be infringing," an element of Plaintiff's claim under the statute. *See* 17 U.S.C. § 512(f). Further, without removal, no damages arise under the statute. Without removal and without damages, Plaintiff has no claim. Therefore, Amaretto's Second Cause of Action should be dismissed.

**B.   The Litigation Privilege Precludes Plaintiff's Misrepresentation, Tortious Interference, Unfair Competition Claims, and Copyright Misuse Claims.**

California law provides for a broad absolute litigation privilege for publications made in judicial proceedings, which bars Plaintiff's misrepresentation, tortious interference, unfair competition, and copyright misuse claims. California Civil Code Section 47 states that a "privileged publication or broadcast is one made . . . (b) [i]n any . . . (2) judicial proceeding." In *Abraham v. Lancaster Community Hospital*, 217 Cal. App. 3d 796, 823-24, 266 Cal. Rptr. 360, 377 (1990), the Court of Appeal held that a defendant hospital's agents' word of mouth discussions in the medical community about the contents of a proposed federal court amended complaint against the plaintiff were privileged, barring plaintiff's state law claims. The court reasoned that the local medical community had a substantial interest in the outcome of the

litigation and liability would "impose a chilling effect on the public's discussion of pending litigation." *Id.* at 823, 266 Cal. Rptr. at 377. "It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it." *Id.* at 823-24, 266 Cal. Rptr. at 377 (quoting *Albertson v. Raboff*, 46 Cal.2d 375, 380, 295 P.2d 405, 409 (1956)).

While 17 U.S.C. § 512(f) arguably preempts Cal. Civil Code Section 47, as explained above, Plaintiff's claims do not fall within Section 512(f) because Linden Lab never took down any Amaretto products. Since Section 512(f) does not apply, Civil Code Section 47 bars any claim for alleged misrepresentations in the case-and-desist letter to Amaretto or in the takedown notification sent to Linden Lab, and Plaintiff's Second Cause of Action therefore fails.

Moreover, just as in *Abraham*, any alleged communications by Ozimals about the threatened or actual litigation is privileged. The Second Life community has a substantial interest in the outcome of the litigation. In addition, it would be anomalous to protect Ozimals' complaint in Alabama, while not permitting Ozimals to let the Second Life community know of its claims. Thus, Section 47 precludes Plaintiff's tortious interference and unfair competition claims based on such communications, and its Third and Fourth Causes of Action fail. Finally, Ozimals' Alabama complaint is privileged under Section 47 and, as explained in Section V(D) below, there is no cause of action for copyright misuse. Thus, Plaintiff's Fifth Cause of Action based on the Alabama complaint fails.

**C.    Allegations of Unspecified Fraudulent Communications to Unspecified Customers Resulting in Harm to Unspecified Business Relations Fail to State a Claim For Tortious Interference or Unfair Competition.**

Under California law, the elements of intentional interference with prospective economic advantage are:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

        and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (quotations and citation omitted).

      In *Sybersound*, the Ninth Circuit affirmed the dismissal of a similar tortious interference claim because the plaintiff "merely state[d] in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted.' " *Id.*  Because the plaintiff "d[id] not allege, for example, that it lost a contract nor that a negotiation with a Customer failed," its claim "for tortious interference with prospective economic relations was properly dismissed." *Id.*

      Likewise, here, Amaretto fails to identify any particular relationship that has been disrupted, or any resulting alleged harm. *See id.*  Amaretto identifies no particular communications at issue.  Amaretto identifies no parties that decided to purchase the breedable animals of others and not purchase Amaretto's.  It identifies no negotiations that failed. Instead, Plaintiff claims Ozimals "induced those existing and potential customers to purchase alternative products to Plaintiff's." (FAC ¶ 47.)  Such a statement is the same kind of conclusory claim of disruption to customer relationships rejected in *Sybersound*.  Accordingly, Amaretto's tortious interference claim is deficient.

      Moreover, because Amaretto's tortious interference claim relies on alleged misrepresentations, it must comply with Federal Rule of Civil Procedure 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted). *See Bioresource, Inc. v. US PharmaCo Distrib., Ltd.*, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010) (dismissing intentional interference with prospective economic advantage claim based on defendant's alleged posting of false information on a website; plaintiff failed to allege specific content of the false representations, when they were made, and why they are false).  By failing to identify

7

particular communications and their recipients that decided not to purchase Amaretto's products, Amaretto failed to satisfy Rule 9(b)'s requirements.  For these reasons, Amaretto's Third Cause of Action for tortious interference with prospective economic relations claim should be dismissed.

Amaretto's unfair competition claim likewise fails.  The Unfair Competition Law bars "unlawful, unfair or fraudulent" business practices.  Cal. Bus. & Prof. Code § 17200.  Here, Amaretto relies on the allegedly fraudulent conduct underlying its tortious interference claim as the basis for the alleged fraudulent conduct in the unfair competition claim.  (*See* FAC ¶ 51.) Thus, to the extent the tortious interference claim fails for failure to meet the requirements under California law to allege particular relationships, communications, and recipients, the same conduct cannot support an unfair competition claim.  *Cf. Williams v. Bank of Am.*, 2010 WL 3034197, at *6 (E.D. Cal. Jul. 30, 2010) (dismissing unfair competition claim because plaintiff failed to state any other claims on which unfair competition could be based). Moreover, the unfair competition claim, based on fraud, must meet Rule 9(b)'s requirement of pleading particularity.  *See Kearns*, 567 F.3d at 1125.  Here, Amaretto fails to meet the requirement of pleading fraud with particularity under Rule 9(b) for the reasons set forth above.

Finally, Plaintiff's claim fails for lack of allegations of actual reliance on the alleged misrepresentations.  The California Supreme Court held that actual reliance is an essential element of a plaintiff's claim under the fraud prong of the Unfair Competition Law.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 207 P.3d 20, 39 (2009).  Here' the FAC alleges that Ozimals made certain unspecified misrepresentations, but does not allege actual reliance. (FAC ¶ 51.)  For these reasons, the Fourth Cause of Action fails.

### D.  Copyright Misuse is Not a Cause of Action on which Relief May Be Granted.

Amaretto labels its Fifth Cause of Action "copyright misuse" and identifies 17 U.S.C. § 102(b) as the statute under which it claims.  Section 102(b), however, merely lists certain

subject matter to which copyright protection will not extend. *See id.* ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). The statute does not provide a cause of action at all, let alone a cause of action for copyright misuse.

"*Copyright misuse is an equitable defense* to copyright infringement, the contours of which are still being defined." *MDY Indus., LLC v. Blizzard Entertainment, Inc.*, __ F.3d __, 2011 WL 538748, at *7 (9th Cir. Feb. 17, 2011) (emphasis added) (dicta) (citing *Practice Management Info. Corp. v. American Medical Ass'n*, 121 F.3d 516, 520 (9th Cir.), *cert. denied*, 522 U.S. 933 (1997) ("We have implied in prior decisions that *misuse is a defense* to copyright infringement. . . . We now adopt that rule.") (emphasis added)). Since "copyright misuse is not a claim but a defense," "[counter-plaintiffs] may not transmute it into an independent claim merely by labeling it one for 'declaratory judgment.' " *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005).

Here, Amaretto attempts to transmute its alleged defense to Ozimals' complaint in the Alabama suit into an independent claim by calling it copyright misuse. Just as *Arista Records* rejected copyright misuse as an independent claim, this Court should reject Amaretto's misuse claim based on the Alabama complaint. In any case, Amaretto alleges no damages that arose from the Alabama complaint or that the alleged misuse warrants damages or any other relief. Moreover, since federal law does not make Ozimals' complaint actionable, Cal. Civil Code Section 47's litigation privilege precludes any liability for filing it. Ozimals therefore respectfully requests the Court to dismiss Amaretto's Fifth Cause of Action for "copyright misuse."

## VI.   CONCLUSION

In sum, Amaretto's claim under Section 512(f) fails because it alleges no reliance on the alleged misrepresentation by Linden Lab and no actual takedown. Plaintiff fails to claim that the alleged communications with third parties interfered with any particular contractual

negotiations or prospective economic advantage, and failed to plead the alleged fraud with particularity. The Fifth Cause of Action is legally deficient because copyright misuse is an affirmative defense, not a claim. Finally, the Second through Fifth Causes of Action fail because of California's broad absolute litigation privilege. Plaintiff has attempted and failed twice to plead these claims. Therefore, the Court should dismiss these causes of action with prejudice.

COOKE, KOBRICK, & WU LLP

Dated: March 11, 2011

By: _____/s/_____
STEPHEN S. WU
Attorneys for Defendants

10

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION OF PLAINTIFF'S FIRST AMENDED COMPLAINT; MPA IN SUPPORT
Case No. C-10-05696 CRB