United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMARETTO RANCH BREEDABLES, LLC<br><br>    Plaintiff,<br><br>v.<br><br>OZIMALS, INC, et al.,<br><br>    Defendants._____/ | No. C 10-05696 CRB<br><br>**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

This is a copyright case between business competitors who sell virtual animals in the virtual world known as Second Life.

Presently before the Court is Defendant Ozimals Inc.'s Motion to Dismiss the statutory and common law unfair competition claims as well as the Digital Millennium Copyright Act ("DMCA") related aspects of Plaintiff Amaretto Ranch Breedables LLC's other claims within the Second Amended Complain ("SAC"). Dkt. 96.

The Court rules as follows:

• Ozimals's Motion to Dismiss Amaretto's UCL claim is DENIED. The Court has already ruled on that issue, concluding that Amaretto has stated a UCL claim;

• Ozimals's Motion to Dismiss Amaretto's common law unfair competition claim for failure to state a claim is GRANTED; and

1 • Ozimals's Motion to Dismiss Amaretto's tortious interference claim in Count 6
2 and Amaretto's other state law claims to the extent those claims are based on
3 Ozimals's DMCA Takedown Notification is GRANTED.

## I. BACKGROUND

The basic background facts underlying this action were sketched out in this Court's April 22, 2011 Order addressing Ozimals's Motion to Dismiss the First Amended Complaint ("FAC"). Apr. 22, 2011 Order (dkt. 80) at 2-4. That Order granted Ozimals's Motion in part. In particular, the Court (1) dismissed with prejudice Amaretto's section 512(f) misrepresentation claim because no actual "takedown" of Amaretto's virtual horse product line occurred; (2) dismissed without prejudice the tortious interference with prospective economic advantage claim because Amaretto failed to allege plausibly that it had been harmed by Ozimals's actions; and (3) denied the Motion "in all other respects." Id. at 2.

In response to that Order, Amaretto filed the SAC. The SAC sets forth causes of action for (1) declaratory relief; (2) statutory and common law unfair competition; (3) copyright misuse; (4) defamation; (5) trade libel; (6) intentional interference with contract; and (7) tortious interference with prospective business advantage. Ozimals has moved to dismiss Counts 2 (unfair competition) and 6 (interference with contract) and any DMCA-related aspects of the remaining state law causes of action.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-2000 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937. 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). According to the Supreme Court, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. at 1949-50. Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

## III. DISCUSSION

### A. Unfair Competition

#### 1. This Court Has Already Ruled on Ozimals's Motion to Dismiss the Statutory Unfair Competition Claim and Denied That Motion

Ozimals moved to dismiss Amaretto's section 17200 UCL claim from the FAC. Mot. to Dismiss FAC (dkt. 72) at 8. This Court ruled on Ozimals's Motion on April 22, 2011. Dkt. 80. Specifically, under a heading within the April Order entitled "The Unfair Business Practices Claim is Viable," the Court said that "Amaretto's Unfair Business Practices Claim is plausibly pleaded. As such, Ozimals's Motion to Dismiss that Claim is DENIED." Apr. 22, 2011 Order (dkt. 80) at 11. Similarly, at the outset of the April Order, the Court said that, except as otherwise noted, the Motion to Dismiss was "DENIED in all other respects." Id. at 2. Notwithstanding the seemingly plain language in the April Order, Ozimals again moves to dismiss the UCL claim, arguing that the April Order somehow failed to address Ozimals's argument that Amaretto lacked standing to a bring a UCL claim. Ozimals is wrong.

The April 22, 2011 Order held that Amaretto's UCL claim was "plausibly pleaded." That means that this Court held that the UCL claim was, as pleaded, factually and legally viable. It is true that the Court did not provide a discussion of its reasoning, but such is not required. Thus, Ozimals's Motion to Dismiss the UCL claim from the SAC is really an unauthorized motion for reconsideration and is DENIED.

#### 2. The Common Law Unfair Competition Claim is Dismissed

Ozimals argues that Amaretto's common law unfair competition claim fails because "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's good as those of another" and such is not alleged to have happened here. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (quoting

3

Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1263 (1992)); Mot. to Dismiss (dkt. 96) at 8-9.[1]

Amaretto asserts that, although common law unfair competition might "generally" involve situations where one party passes off its goods as those of another, it is not limited only to that scenario. Opp'n to Mot. to Dismiss (dkt. 99) at 11-12. In support of that argument, Amaretto cites Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone, Co., 20 Cal. 4th 163, 192-93 (1999), in which a concurring Justice noted that "the tort [of unfair competition] has been extended to situations other than classic 'passing off,'" because "deceptive conduct has remained at the heart of unfair competition" and is "as various as the ingenuity of the dishonest schemer . . . ."

In the Court's view, the Ninth Circuit's Sybersound decision is more recent than Cal-Tech Communications, factually analogous to this case, and requires dismissal. Sybersound was a case by a karaoke record producer and several music production companies against other karaoke record producers. The plaintiffs made a claim for, among other things, common law unfair competition. 517 F.3d at 1137. The plaintiffs alleged that the defendants misrepresented to third-party customers that the defendant's records were fully licensed and that the plaintiff's records were not. Id. at 1141-42. The Ninth Circuit held that the plaintiffs did not state a common law unfair competition claim because they did not allege that the

---

[1] Ozimals should have raised this argument in its Motion to Dismiss the FAC. As in the SAC, the unfair competition claim in the FAC was brought under both the UCL and common law. FAC (dkt. 68) at 13; SAC (dkt. 92) at 18. Yet in its Motion to Dismiss the FAC, Ozimals addressed only the UCL aspect of the unfair competition claim. See Mot. to Dismiss (dkt. 72) at 6-8; Reply (dkt. 76) at 7-12. Federal Rule 12(g)(2) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion. Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). However, courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy. See, e.g., Nat. City Bank, N.A. v. Prime Lending, Inc., No. CV-10-034-EFS, 2010 WL 2854247, at *2 (E.D. Wash. July 19, 2010) ("Judicial economy favors ignoring the motions' technical deficiencies. Rule 12(g) merely prohibits them from raising it before filing an answer because they did not raise it in their initial response under Rule 12(b). Plaintiffs do not dispute that Defendants would simply be able to renew their motion as a Rule 12(c) motion for judgment on the pleadings after filing an answer. The Court declines to pass on this opportunity to narrow the issues because Defendants are entitled to raise these defenses even if they already filed a motion to dismiss. Nor do the motions result in prejudice or surprise. The Court finds good cause to consider them now."). Thus, the Court will consider Ozimals's argument that the common law unfair competition claim is not viable.

4

defendants "passed off their goods as those of another" or "exploit[ed] trade names or trademarks . . . ." Id. at 1153 (citing Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1263 (1992) (common law unfair competition provides "an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection[,]" and the expansion of unfair competition law is primarily based in statutes). This case is similar to Sybersound because Amaretto's allegations do not concern Ozimals passing off Amaretto's goods as its own. In light of Sybersound, Ozimals's Motion to Dismiss the common law unfair competition claim is GRANTED.

### B.     The DMCA Related Claims Are Preempted

Several of Amaretto's claims are based, in whole or part, on Ozimals sending allegedly baseless DMCA Takedown Notifications to Linden Research, Inc.[2] Ozimals has moved on preemption grounds to dismiss Amaretto's interference with contract claim in Count 6 and its other state law claims to the extent based on the allegedly false Takedown Notifications. Mot. to Dismiss (dkt. 96) at 9-13; Reply (dkt. 100) at 5-10.

Existing authority on this issue for the most part supports Ozimals's preemption argument. Specifically, two cases from the Northern District of California have held that 17 U.S.C. § 512(f) preempts state law claims based on DMCA Takedown Notifications.

> Even if a copyright holder does not intend to cause anything other than the removal of allegedly infringing material, compliance with the DMCA's procedures nonetheless may result in disruption of a contractual relationship: by sending a letter, the copyright holder can effectuate the disruption of ISP service to clients. If adherence to the

---

[2] The FAC asserted a misrepresentation claim under 17 U.S.C. § 512(f) based on two allegedly baseless DMCA Takedown Notifications sent by Ozimals to Linden Research with the intent of removing Amaretto's horse product line from Second Life. FAC (dkt. 38) ¶¶ 40-45. The DMCA creates a "notice" and "takedown" regime under which a person who thinks that his material is being displayed on the internet in violation of copyright law can send a notice to an internet service provider. As a matter of course, the internet service provider takes down the allegedly infringing content from the internet and is immune from liability for doing so absent particular circumstances. Section 512(f) allows a party that believes its content was improperly removed from the internet to sue the person who sent the takedown notice. Although Amaretto pleaded that Ozimals's Takedown Notifications were knowingly false, this Court dismissed Amaretto's section 512(f) claim because no takedown occurred. Apr. 22, 2011 Order (dkt. 80) at 4-6; 17 U.S.C. § 512(f) ("Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages . . . incurred by the alleged infringer . . . who is injured by such misrepresentation, <u>as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing</u> . . . .") (emphasis added).

> DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law. To the extent that Plaintiffs argue that there is no conflict because Diebold's use of the DMCA in this case was based on misrepresentation of Diebold's rights, their argument is undercut by the provisions of the statute itself.

Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195, 1205-1206 (N.D. Cal. 2004); Lenz v. Universal Music Corp., No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) ("[G]iven that a special provision of the Copyright Act itself regulates misrepresentations in [DMCA Takedown N]otifications, [Section 512(f)] constitutes the sole remedy for a customer who objects to its contents and their effects."). These cases stand for the propositions that (1) a DMCA Takedown Notification is a creature of a federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification.

Amaretto argues that the proper test for preemption is found in Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1137-38 (9th Cir. 2006) and that, under that test, its state law claims are not preempted. Laws sets forth a two-part test for whether a state law claim is preempted by the Copyright Act. "We must first determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming that it does, we must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." Id. at 1137-38; see also 17 U.S.C. § 301 (general preemption provision); Laws, 448 F.3d at 1137 ("Congress explained what the statute made obvious: '[t]he intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works, within the scope of the Federal copyright law.'") (citing H.R. Rep. No. 94-1476, at 130 (1976); Maljack Prods. v. GoodTimes Home Video Corp., 81 F.3d 881, 888 (9th Cir. 1996)). Under a straightforward Laws analysis, Amaretto's state law claims are not preempted because they arise under state law that is not "equivalent to copyright" (e.g. defamation, tortious interference, etc.).

6

Lenz addressed and rejected the argument that Laws shows that state law claims based on DMCA Takedown Notifications are not preempted. It reasoned that general preemption principles apply in addition to preemption that exists as a result of application of the Laws test.

> The Ninth Circuit has applied conflict and field preemption analysis to a recording and priority provision of the state uniform commercial code even though those state law provisions did not deal with rights equivalent to those found in 17 U.S.C. § 106. See In re World Auxiliary Power Co., 303 F.3d 1120 (9th Cir. 2002). Professor Nimmer also has observed that "even apart from Section 301, the general proposition pertains in copyright law, as elsewhere, that a state law is invalid that stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." 1 Nimmer on Copyright 1.01[B][3][a] at 1-77. Citing Diebold, Professor Nimmer notes specifically that "[g]iven that a special provision of the Copyright Act itself regulates misrepresentation in such notifications, that provision constitutes the sole remedy for a customer who objects to its contents and their effects."

Lenz, 2008 WL 962102, at *4. The Court agrees that, the results of a Laws preemption test notwithstanding, the Copyright Act preempts any state law (1) with which it directly conflicts or (2) falling within an exclusively federal field. See Online Policy Group, 337 F. Supp. 2d at 1205 ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law.").

Amaretto all but concedes that general preemption principles apply in addition to those set forth in Laws by arguing that preemption of state law claims in Online Policy Group and Lenz made sense, if at all, because in those cases an actual takedown occurred and there was a real possibility of actual conflict between federal and state law. Opp'n to Mot. to Dismiss (dkt. 99) at 5. However, where, as here, no takedown occurred, Amaretto argues that there is no preemption because the DMCA does not apply. At least one district court has taken a position ostensibly similar to the one urged by Amaretto. "[B]ecause the Court finds that the DMCA is not applicable to the instant dispute, it concludes that the DMCA does not preempt the [] action [for tortious interference]." Rock River Comm., Inc. v. Universal Music Group, Inc., No. CV08–635 CAS (AJWx), 2011 WL 1598916, at *15

(C.D. Cal. Apr. 27, 2011); see also World Auxiliary Power, 303 F.3d at 1120 (no preemption of state law regarding unregistered copyrights because the Copyright Act does not apply to unregistered copyrights).

This case is distinguishable from Rock River in an important way.[3]  Specifically, the reason the DMCA "did not apply" in Rock River – there was no "takedown notification" in the first place – removed the case entirely from the ambit of the DMCA. Id. at *16.  Here, by contrast, Amaretto has plainly alleged that Ozimals sent Takedown Notifications within the ambit of the DMCA.  SAC (dkt. 92) ¶ 14, 15.  Amaretto's DMCA claim was dismissed not because Ozimals's conduct fell outside the ambit of the DMCA but because Congress decided that to be liable for misrepresentation under section 512(f) an actual takedown had to occur.  Therefore, Rock River is not compelling persuasive authority for the proposition that whenever a DMCA claim is dismissed from a lawsuit there can be no preemption of state law claims based on false DMCA Takedown Notifications.  Rather, what matters for preemption purposes is whether the defendant's actions fall within the ambit of the DMCA.

This brings us to Amaretto's overarching concern and the rhetorical thrust of its argument against preemption – it is unfair to leave it without a remedy by holding both that (1) it cannot state a DMCA misrepresentation claim because no takedown occurred and (2) its related state law claims are preempted.  But whether state law is preempted does not turn on whether, if it is, the plaintiff will be left without a remedy.  See Lenz, 2008 WL 962102, at *4; see also Kyle Railways, Inc. v. Pacific Admin. Serv., Inc., 990 F.2d 513, 519 (9th Cir. 1993) ("The essence of Kyle's claim is that by preempting any state law causes of action Kyle might have against the defendants, while failing to provide federal causes of action, ERISA has left a gap in the law.  However, such 'a gap is legitimate if it is the result intended by Congress.'" Howard v. Parisian, Inc., 807 F.2d 1560, 1565 (11th Cir. 1987)).  Rather, the preemption analysis turns on whether federal law conflicts with state law and/or

---

[3] This Court ordered and received supplemental briefing as to the impact of Rock River on Ozimals's preemption argument.  Order for Supplemental Briefing (dkt. 101).

8

occupies a particular field. Such is the case here because DMCA Takedown Notifications are a creature of federal law, and there is a specific federal remedy for their misuse.

\* \* \*

Therefore, Amaretto's interference with contract claim in Count 6 is preempted, as is any other state law claim to the extent such claim is based on Ozimals's DMCA Takedown Notifications. Accordoingly, Ozimals's Motion to Dismiss Count 6 and any other state law claim to the extent based on Ozimals's DMCA Takedown Notifications is GRANTED.

## IV. CONCLUSION

This Court has already denied Ozimals's motion to dismiss Amaretto's UCL claim, and Ozimals's renewed Motion to Dismiss that claim is DENIED. However, Amaretto's common law UCL claim is dismissed because Amaretto has not pleaded that Ozimals passed off Amaretto's products as Ozimals's products or acted in any similar fashion. Moreover, the DMCA preempts Amaretto's interference with contract claim (Count 6) and Amaretto's other state law claims to the extent based on Ozimals's DMCA Takedown Notifications. Accordingly, Ozimals's Motion to Dismiss on preemption grounds is GRANTED.

**IT IS SO ORDERED.**[4]

Dated: July 8, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[4] Ozimals shall file its Answer by August 5, 2011.