IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMARETTO RANCH BREEDABLES,<br><br>  Plaintiff,<br><br>  v.<br><br>OZIMALS INC. ET AL.,<br><br>  Defendants. | No. C 10-5696 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

This is a copyright case between business competitors who sell virtual animals in an online simulated world known as Second Life. Presently before the Court is Plaintiff/Counterclaim Defendant Amaretto Ranch Breedables' ("Amaretto") Motion for Summary Judgment on (1) Defendant/Counterclaim Plaintiff Ozimals, Inc.'s ("Ozimals") copyright infringement counterclaim; (2) Amaretto's declaratory judgment claim, and (3) Amaretto's copyright misuse claim. Dkt. 124.

## I. BACKGROUND

### A. Threshold Evidentiary Objections

Both parties lodge voluminous generic objections to huge portions of the record. E.g., Opp'n at 2-3 (over fifty objections in two pages), Reply at 12-14. Many of the so-called objections are in fact arguments about the significance of the evidence, not their admissibility. The Court's review revealed that the objections are meritless or, at best, grossly overbroad and irrelevant as to material portions of the record. This Court need not

address boilerplate evidentiary objections that the parties themselves deem unworthy of development, Californians for Disability Rights, Inc. v. Cal. Dep't of Transp., 249 F.R.D. 334, 349-50 (N.D. Cal. 2008); Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 199 (N.D. Cal. 2004); Cmtys. Actively Living Indep. & Free v. City of L.A., No. CV09-0287CBM (RZX), 2011 WL 4595993, at *8 (C.D. Cal. Feb. 10, 2011), and the Court accordingly summarily overrules the objections.[1]

### B. Factual Background

Second Life is an online virtual world created by the company Linden Research. Represented in the virtual world by an avatar, users of Second Life participate in activities like socializing with other users, traveling the virtual world, and engaging in commerce using the Second Life currency, the Linden dollar, which users can get by paying Linden real money. Stibbards Decl. (Ex. A to dkt. 124-1) ¶¶ 6-9.

Third-party software developers, using a programming language unique to Second Life, can create and market their own 3-D objects that will operate in Second Life's virtual world. Id. ¶¶ 10-13. The parties here are two such companies that developed competing "breedable animals" for purchase and use in Second Life; Ozimals developed a virtual bunny, and Amaretto a virtual horse. Sargent Decl. (dkt. 129-1) ¶¶ 2. The "breedable" label reflects that the virtual animals were programmed to function in certain ways like real animals in that, for example, they reproduced and passed on genetic traits. Jadzewski Decl. (Ex. B to dkt. 124-1) ¶ 11.

Ozimals' bunny product appeared first, Sargent Decl. (dkt 129-1) ¶ 6, and after some informal communications between representatives of Ozimals and Amaretto in the ensuing months about the possibility that the horse product Amaretto was developing infringed Ozimals' copyright, id., Amaretto released its virtual horse. Id. ¶ 9. Ozimals sent Amaretto a cease-and-desist letter in November 2010, see Second Amended Compl. Ex. 1, and a few weeks later Ozimals received a registration certificate from the U.S. Copyright Office for its

---

[1] Ozimals' separately filed Objections and Motion to Strike (dkt. 132) concerns declarations submitted with Amaretto's reply brief. The Court does not rely on any of that material in resolving this motion, and DENIES Ozimals' motion as moot.

"Ozimals Animal Scripts" computer program (the "'661 Copyright"), Kearns Decl. (dkt. 124-1) Ex. I.

The following month Ozimals sent a Digital Millennium Copyright Act (DMCA) takedown notice to Linden, asserting that Amaretto's horses infringed Ozimals' copyright, and requesting that Linden remove the horse products. See Second Amended Compl. Ex. 3. Amaretto responded with a counter-DMCA notice to Linden, id. Ex. 4, and filed the instant action in this Court, where it secured a temporary restraining order and preliminary injunction preventing Linden from removing the virtual horses. See dkts. 29, 49.

Among other claims, Amaretto alleged that Ozimals' DMCA notice was copyright misuse under 17 U.S.C. § 512(f), and also sought a declaration from this Court that its horses did not infringe. See Complaint (dkt. 1) ¶ 35, Application for TRO (dkt. 3). Ozimals counterclaimed for copyright infringement. See Answer (dkt. 106).

Following discovery and motion practice that narrowed the scope of the case, see dkts. 81, 104, Amaretto now moves for summary judgment on three remaining claims: (1) Amaretto's declaratory judgment claim, (2) Amaretto's copyright misuse claim, and (3) Ozimals' infringement counterclaim. Dkt. 124.

## II. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Ozimals' Infringement Counterclaim

The parties do not dispute the basic facts regarding the creation of the code for Ozimals' bunny program. Three individuals–Candace Sargent, Cameron Holt, and Edward Distelhurst–were involved. Holt and Distelhurst wrote portions of the code, Sargent Depo. (Ex. L to dkt. 129-1) at 76-78, while Sargent described herself as contributing "the structure in the menus and the text that the user sees, [and] the design" of the program–though no actual code. Id. at 77-78; see also Holt Depo. (Ex. M to dkt. 129-1) at 41. All three were listed on the '661 Copyright application and registration certificate as co-authors. See Exs. I, J to Kearns Decl.

Sargent and Holt executed documents purporting to transfer to Ozimals each of the authors' "entire right, title, interest, and privilege, in and to the Ozimals Animals Scripts, . . . including, without, limitation, all rights of . . . copyright" in exchange for unspecified consideration. See Assignment, Exs. 16, 17 to Sargent Depo. Distelhurst, however, never attempted to transfer his rights to Ozimals.

On the contrary; he sued Ozimals (and Sargent) in Texas state court, arguing that they breached a contract with him to help write the bunny code, and that they owed him money. See Second Amended Petition, Ex. N to Kearns Decl. That case settled. A settlement agreement, signed by Distelhurst, Sargent, and an agent of Ozimals, included the following provision:

> [Distelhurst] acknowledges that he is a joint author under copyright registration number TX007251661 along with Candace Sargent and Cameron Holt. [Distelhurst] further acknowledges that he will not assign his interest in the copyright under registration number TX0007251661.

Rule 11 Settlement Agreement, Ex. P to Kearns Decl. ("Settlement Agreement"). Thus, of the three original authors of the code, only two arguably transferred their interests in the '661 Copyright to Ozimals.[2]

---

[2] Amaretto does not concede that Sargent and Holt's contributions to the coding process made them co-owners of the copyright, but argues (correctly) that it does not matter for purposes of this issue since Distelhurst was certainly an owner and he never assigned his rights.

4

That settlement agreement may or may not have any force at all. A later agreement in the same case expressly stated that it "supersede[d] and replace[d] any previous" agreement in the case, and the new agreement made no mention whatsoever of the '661 copyright or joint ownership. See Ex. B to Kearns Reply Decl. (dkt. 131). The Court need not rely on either agreement or treat one as operative over the other, because the outcome would be the same under either (or if no agreement had been made at all).

In Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008), the Ninth Circuit confronted a factually analogous situation. Sybersound and UAV were competitors in the business of producing karaoke records. Id. at 1141. Sybersound sued UAV for copyright infringement, alleging that UAV produced karaoke records with songs for which Sybersound owned copyrights. Id. at 1142. Sybersound argued that it acquired copyright over the relevant songs through a written assignment-of-rights agreement with one of the original co-owners of the copyrights, TVT Music Publishing. Id.

The agreement between Sybersound and TVT designated Sybersound as the "exclusive assignee and licensee of [TVT]'s copyrighted interests for purposes of karaoke use, and also exclusive assignee of the right to sue to enforce the assigned copyright interests, for both present and past infringements in karaoke exploitation." Id. at 1145. Notwithstanding that broad language, the Ninth Circuit held that because TVT was not the exclusive owner of the karaoke-use interest in the copyrights, it could grant Sybersound "only a non-exclusive license . . . because TVT may not limit the other co-owners' independent rights to exploit the copyright." Id. at 1146. And, the court concluded, since Sybersound was neither an exclusive licensee nor co-owner of the copyrights, it had no standing to sue for copyright infringement. Id.

Leading commentators have criticized Sybersound, see III Goldstein on Copyright § 15.5 (3d ed. 2011); 4 Nimmer on Copyright § 6.10[A][2][d] (rev. ed. 2012); 2 Patry on Copyright § 5:103 (2012), and its reasoning has been rejected by at least one court not bound by its holding. See Brownmark Films, LLC v. Comedy Partners, 800 F. Supp. 2d 991, 996-

5

97 (E.D. Wis. 2011). Nevertheless, this Court must follow <u>Sybersound</u>, and Ozimals' attempts to distinguish it fall short.

Ozimals first contends that the transfer here was of exclusive rights because Distelhurst "expressly relinquished his ownership" interest in the '661 Copyright in the state court settlement agreement, Opp'n at 10, and so the assignments from Sargent and Holt amounted to assignments from all owners. Assuming without deciding that agreement has any force, the actual language in that agreement contradicts Ozimals' claim: "Plaintiff [Distelhurst] acknowledges that [the '661 Copyright] is <u>jointly owned by Plaintiff [Distelhurst]</u>, Candace Sargent, and Cameron Holt." (emphasis added). Distelhurst retained an ownership interest in the '661 Copyright–an interest he agreed not to assign. Ozimals' suggestion in a footnote that Distelhurst "effectively assigned [his interest] to Sargent and Holt," Opp'n at 12 n.22, has no basis in the language of the agreement.

Next, Ozimals misreads <u>Sybersound</u>, arguing that "the issue [in <u>Sybersound</u>] was whether the other joint authors granted an exclusive license to Sybersound, not whether any one of the joint authors had standing to sue for infringement. . . . Ozimals is not a licensee, it is an owner. " Opp'n at 11. In declaring that it is a co-owner of the '661 Copyright, Ozimals begs the question; <u>Sybersound</u> stands for the proposition that, notwithstanding the language of the assignment agreements and Sargent and Holt's apparent intent to completely transfer their ownership interests to Ozimals, they had the power to grant Ozimals only a non-exclusive license. Ozimals therefore is not a co-owner, but a non-exclusive licensee without standing to sue for copyright infringement.

Accordingly, the Court GRANTS IN PART Amaretto's Motion for Summary Judgment as to Ozimals' copyright infringement counterclaim.

**B.     Amaretto's Declaratory Judgment Claim**

To have standing to pursue a declaratory relief action regarding copyright infringement, a plaintiff must show that "under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief." <u>Hal Roach Studios, Inc. v.</u>

1 Richard Feiner & Co., 896 F.2d 1542, 1555-56 (9th Cir. 1989). In particular, the plaintiff
2 must have "a real and reasonable apprehension that he will be subject to liability if he
3 continues" the allegedly infringing conduct. Id. at 1556.

4 Moreover, the Declaratory Judgment Act vests district courts with discretion over
5 whether to grant declaratory relief. See 28 U.S.C. § 2201 ("[A]ny court of the United States
6 . . . may declare the rights and other legal relations . . ." (emphasis added)). As the Supreme
7 Court explained in MedImmune, Inc. v. Genentech, Inc., the text of the Declaratory
8 Judgment Act "has long been understood to confer on federal courts unique and substantial
9 discretion in deciding whether to declare the rights of litigants." 549 U.S. 118, 136 (2007)
10 (internal quotation marks omitted).

11 Here, Amaretto faces no serious prospect of copyright infringement liability regarding
12 the '661 Copyright, and so it lacks standing to seek a declaratory judgment that its virtual
13 horses do not infringe that copyright. As explained above, Ozimals cannot sue for
14 infringement. Neither–as demonstrated by their failure to do so in this suit–can the
15 individual defendants Sargent and Holt sue for infringement, since they voluntarily
16 relinquished their rights to do so in exchange for consideration through assignment
17 agreements. Accordingly, Amaretto has failed to demonstrate that it has standing to bring its
18 declaratory relief claim.

19 And for the same reasons, the Court would decline to exercise its discretion to reach
20 Amaretto's declaratory relief claims even if Amaretto could satisfy the bare minimum "case
21 or controversy" requirement. The possibility Amaretto will face any liability on the '661
22 copyright is too speculative to warrant the requested declaration.

23 Amaretto suggested during oral argument that the merits of the case may remain
24 justiciable on account of Amaretto's potential entitlement to attorneys' fees. That argument
25 more commonly arises in the context of mootness, where it consistently fails when, as here,
26 the controversy ends before a decision is reached on the merits. E.g., Lewis v. Cont'l Bank
27 Corp., 494 U.S. 472, 480-81 (1990); 13C Wright et al., Federal Practice & Procedure
28 § 3533.3 at n.68 (3d ed. 2008) (collecting cases). The Court sees no reason to treat the issue

7

1 differently where the problem is standing instead of mootness, see Steel Co. v. Citizens for a
2 Better Environment, 523 U.S. 83, 107 (1998) ("The litigation must give the plaintiff some
3 other benefit besides reimbursement of costs that are a byproduct of the litigation itself.");
4 Jacobsen v. Katzer, 609 F. Supp. 2d 925, 931 (N.D. Cal. 2009), and anyway any entitlement
5 to fees would be an ancillary issue that would not preserve the copyright-related claims.
6 Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir. 1996).

### C. Amaretto's Copyright Misuse Claim

This Court previously permitted Amaretto's copyright misuse claim to go forward as an independent cause of action notwithstanding a split of authority on whether copyright misuse can only be asserted as a defense. See dkt. 80 at 11-12. However, as noted in that Order and the cases cited permitting copyright misuse as a freestanding cause of action, such claims are nothing more than actions for declaratory relief. E.g., Elec. Data Sys. Corp. v. Computer Assoc. Int'l, Inc., 802 F. Supp. at 1465-66 ("To the extent [Plaintiff] seeks a declaration that it has not infringed [Defendant's] copyrights because of [Defendant's] alleged misuse of such copyrights, the court will permit the claim to be asserted."). As a result, Amaretto's misuse claim fails for the same reasons just discussed.

During oral argument on this motion, Amaretto cited a district court case suggesting that the doctrine of copyright misuse permits plaintiffs to assert claims "to clarify the risks it confronts by marketing the products at issue" and to assert claims on behalf of (unnamed) third parties who might conceivably be injured by the defendant's conduct, thus providing standing even where the plaintiff itself might not face harm. See Apple Inc. v. Psystar Corp., No. 08-03251 WHA, 2009 WL 303046, at *2 (N.D. Cal. Feb. 6, 2009) (unpublished).

Putting aside the absence of any explanation as to why basic principles of standing should be compromised in service of plaintiffs asserting copyright misuse, here Defendants lack the ability to sue anyone for infringing the '661 Copyright, and so third parties face the same non-risk of liability as Amaretto faces in marketing its horse product. Moreover, the Psystar court rested its holding on the premise that "subject-matter jurisdiction [otherwise] exist[ed] over the declaratory judgment action," id. at *3, which is not the case here.

8

## IV. CONCLUSION

Ozimals lacks standing to pursue its counterclaim, and so the Court GRANTS IN PART Amaretto's Motion for Summary Judgment as to the counterclaim. Because Amaretto has not established a reasonable likelihood of facing copyright infringement liability, the Court finds that Amaretto lacks standing to pursue its remaining claims; it also finds that the possibility of harm is so speculative that the Court would not exercise its discretion to rule on the declaratory relief claims even if the threshold standing requirements were met. Accordingly, the Court DENIES IN PART Amaretto's motion for summary judgment as to the declaratory judgment and copyright misuse claims, and DISMISSES those claims for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: November 5, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE