1  Michelle M. McCliman, State Bar No. 191241
   **McCLIMAN LAW FIRM, APC**
2  27702 Crown Valley Parkway
   Suite D4-304
3  Ladera Ranch, California 92694
   Telephone: (714) 423-2189
4  Facsimile:  (949) 266-9067
   E-Mail:     mmccliman@mcclimanlawfirm.com
5
   Attorneys for Defendants Ozimals, Inc., Candace Sargent,
6  Cameron Holt, and Creative Acorn Studio

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  AMARETTO RANCH BREEDABLES, LLC, a California Limited Liability Corporation, | Case No. 3:10-CV-05696 CRB |
| 13  Plaintiff, | **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION** |
| 14  v. | |
| 16  OZIMALS, INC., an Alabama corporation; CANDACE SARGENT, an individual; CAMERON HOLT, an individual; CREATIVE ACORN STUDIO, an Alabama entity, | |
| 18 | Date: 10 May, 2013 |
| 19  Defendants. | Time: 10:00 a.m.<br>Courtroom: 6 (17th Floor) |
| 20  AND RELATED COUNTERCLAIM. | |



---
1
DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. CV10-5696 CRB

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................2

II. FACTUAL ISSUES AND EVIDENTIARY OBJECTIONS ..................................................2

    A. Objections To And Motion to Strike Amaretto's Evidence .............................................2

    B. Factual Issues ....................................................................................................................4

III. AMARETTO'S DEFAMATION ANALYSIS IS INSUFFICIENT .......................................5

    A. The Heated Debate Argument Is Erroneous .....................................................................7

    B. The Disputed Blog Contained Opinion Which Was Not Provably False ........................8

    C. Amaretto's Damages Analysis Is Irrelevant ...................................................................12

    D. The Litigation Privilege Applies To Blog ......................................................................13

IV. AMARETTO'S TRADE LIBEL ANALYSIS IS INSUFFICIENT ......................................14

V. AMARETTO'S INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE ANALYSIS FAILS ..........................................................................................15

VI. AMARETTO'S UNFAIR COMPETITION ANALYSIS IS NOT SUFFICIENT TO DEFEAT SUMMARY JUDGMENT ...............................................................................16

VII. CONCLUSION .....................................................................................................................17

i

CAPTION

C:\Documents and Settings\kdorn\Local Settings\Temporary Internet Files\Content.Outlook\0VQQJ1P3\Reply to Opposition Final.doc

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

# TABLE OF AUTHORITIES
Page(s)

**Cases**

*Art of Living Foundation v. Does*, 2011 WL 2441898 (N.D.Cal. 2011) ........................................... 6

*Cook v. J & J Snack Foods Corp.*, 2:09-CV-02297-GEB, 2010 WL 3910478 (E.D. Cal. Jan. 28, 2010) .......... 3

*Copp v. Paxton*, 45 Cal. App. 4th 829 (1996) ........................................................... 13

*Erich v. Etner*, 224 Cal. App. 2d 69 (1964) ........................................................... 15

*Financial Corp. of America v. Wilburn*, 189 Cal. App. 3d 764 (1987) ................................. 13

*Fowle v. C & C Cola*, 868 F.2d 59 (3d Cir.1989) ......................................................... 4

*Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) ..................... 5, 6

*Hawran v. Hixson*, 209 Cal. App. 4th 256 (2012) ..................................................... 5, 13

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515 (2006) ................... 10

*Loomis v. Sup.Ct. (Murphy)*, 195 Cal. App. 3d 1026 (1987) ............................................ 14

*MacLeod v. Tribune Pub. Co.*, 52 Cal. 2d 536 (1959) ................................................... 7

*Marsh v. Anesthesia Service Medical Group, Inc.*, 200 Cal. App. 4th 480 (2011) ...................... 15

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................................... 8

*Nicosia v. DeRooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) .............................................. 8

*Rothman v. Jackson*, 49 Cal. App. 4th 1134 (1996) .................................................... 13

*Ruiz v. Harbor View Community Ass'n*, 134 Cal. App. 4th 1456 (2005) ................................... 8

*Smith v. City of Oakland*, C 05 4045 EMC, 2007 WL 2288328 (N.D. Cal. Aug. 9, 2007) ..................... 3

*Susan A. v. County of Sonoma*, 2 Cal. App. 4th 88 (1991) ............................................ 13

*Tableau Software, Inc. v. AnyAspect KFT*, 2008 WL 4287557, at *2 (N.D. Cal. 2008) ..................... 3

*Underwager v. Channel 9 Australia*, 69 F. 3d 361 (9th Cir. 1995) ............................... 6, 7, 8

*Wittmer v. Peters*, 87 F.3d 916 (7th Cir.1996) ....................................................... 4

**Other Authorities**

GARNER, BLACK'S LAW DICTIONARY, p. 1429 (9th ed.) ..................................................... 17

**Rules**

CAPTION

C:\Documents and Settings\kdom\Local Settings\Temporary Internet Files\Content.Outlook\0VQQJ1P3\Reply to Opposition Final.doc

THE McCLIMAN LAW FIRM

**TABLE OF AUTHORITIES (cont.)**

Page(s)

Federal Rules of Evidence 901 ........................................................................................................3

Federal Rules of Evidence 801-803 ................................................................................................3

Federal Rules of Evidence 602 ........................................................................................................3

Federal Rules of Evidence 104(b) ...................................................................................................3

Federal Rules of Civil Procedure 56(e) ...........................................................................................3

Federal Rules of Civil Procedure 56(c)(4) ......................................................................................3

## I. INTRODUCTION

Defendants hereby respond to Plaintiff Amaretto Ranch Breedables L.L.C.'s ("Amaretto") Opposition to Defendants Motion for Summary Judgment, or in the Alternative Summary Adjudication [D.E. 162]. The Opposition makes clear that there is no real genuine issue of material fact and the Defendants are entitled to summary judgment. Amaretto's Opposition appears to focus more on the copyright issue which this Court already determined. Indeed, Amaretto believes that it "will prove that the elements are not copyrightable at trial." Opp., at 3:7-8. However, there is no copyright cause of action currently pending before this Court, this Court already determined that issue. Thus, Amaretto's lengthy discussion regarding the copyright issue is simply not relevant to the issues raised in the Motion.[1] Moreover, simply because two years after Amaretto initiated this Action this Court determined that Ozimals, Inc. had no standing to assert a copyright claim against Amaretto is not proof positive that Ozimals, Inc., at the time of the blog post (posted the day after Amaretto filed the instant lawsuit and in an obvious response to questions regarding Amaretto's lawsuit), knew the statements therein were false. Amaretto's failure on this point, even assuming that the opinions set forth in the blog were defamatory (i.e. actionable), is fatal to Amaretto's defamation, trade libel, and unfair competition claim. The cease and desist letter and Amaretto's response simply shows that the attorneys representing Ozimals, Inc. and Amaretto disagreed. That is not defamation.[2]

## II. FACTUAL ISSUES AND EVIDENTIARY OBJECTIONS

### A. Objections To And Motion to Strike Amaretto's Evidence

Defendants, pursuant to Local Rule 7-3(c), submit the following objections to and move to strike certain portions of the Declaration of Anne E. Kearns ("Kearns Dec.,"), including the attached exhibits in support of Amaretto's Opposition, as follows:

---

[1] Amaretto attempts to claim that its copyright discussion is part of its showing that the statements were false, but there remains a valid and existing copyright which is prima facie evidence that the copyrighted material is copyrightable.

[2] This Court should note that Amaretto has made no attempt to show how or why Defendant Cameron Holt or his website design firm (outside of Second Life), Creative Acorn Studio, was in any way involved with the allegedly defamatory and interfering conduct. In fact, other than to identify them, Amaretto's Opposition does not even mention either of these Defendants. Again, this is a telling omission by Amaretto that, at the very least, with regard to Mr. Holt and Creative Acorn Studio, summary adjudication is proper.



1.   Defendants object to and move to strike paragraph 2 and Exhibit D of Kearns Dec., on the grounds that the Exhibit lacks foundation, is lacking authentication (Kearns' declaration does not provide that she has personal knowledge of the independent contractor agreement that is attached to her declaration as exhibits), contains hearsay to which no hearsay exception applies (being filed in another Action is not an exception to the hearsay rule), the declarant lacks personal knowledge of the items set forth in the Exhibit (she is not an author or party to the document). Fed. R. Evid. 104(b), 602, 801-803, and 901; *see also*, Fed. R. Civ. Proc. 56(c)(4); *Tableau Software, Inc. v. AnyAspect KFT*, 2008 WL 4287557, at *2 (N.D. Cal. 2008).

2.   Defendants object to and move to strike paragraphs 13 and 14 and Exhibits M and N, on the grounds that they lack foundation (she is not an author), are not authenticated (Kearns' Dec. does not provide that she has personal knowledge of the website print outs or book page that are attached. That is, she does not declare that she actually viewed the websites/books, when and how the pages were printed, or that the print outs accurately reflect the contents of the websites/book she viewed), contain hearsay (and in many cases multiple levels of hearsay) to which no hearsay exception applies, the declarant lacks personal knowledge of the items set forth in the Exhibits. Fed. R. Evid. 104(b), 602, 801-803, and 901; *see also*, Fed. R. Civ. Proc. 56(c)(4) and 56(e); *Cook v. J & J Snack Foods Corp.*, 2:09-CV-02297-GEB, 2010 WL 3910478 (E.D. Cal. Jan. 28, 2010) (sustaining objection to websites for lack of authentication and lack of personal knowledge).

3.   Defendants object to and move to strike paragraph 15 and O of the Kearns Dec. on the grounds that it lacks foundation (and is incomplete), is not authenticated, contains hearsay to which no hearsay exception applies, and the report is not a sworn affidavit. Fed. R. Evid. 104(b), 602, 801-803, and 901; *see also*, Fed. R. Civ. Proc. 56(c)(4); *Smith v. City of Oakland*, C 05 4045 EMC, 2007 WL 2288328 (N.D. Cal. Aug. 9, 2007) ("Although the report was signed by [the expert] and attached to a declaration of Plaintiff['s] counsel . . . the report was not sworn to by the expert. 'Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, **and may be disregarded by the court when ruling on a motion for summary judgment**.'" (emphasis added) (citing 11-56

1  Moore's Fed. Prac. Civ. § 56.14; *see also Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir.1996) (noting that unsworn expert reports are not admissible under Rule 56(e) to support or oppose summary judgment); *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir.1989) (stating that "[t]he substance of this report was not sworn to by the alleged expert" and so "the purported expert's report is not competent to be considered on a motion for summary judgment.")).

### B. Factual Issues

Amaretto's Opposition is filled with inaccurate statements of supposed facts. For example, Amaretto constantly quotes the term "unsafe environment" even though that phrase does not actually appear in the blog. The actual quote from the blog post is: "We are fortunate to be able to invest into protecting our intellectual property and part of what we hope to do with this action is to help establish a safer environment for great ideas to flourish in Second Life." When read in context, this sentence is a general statement of Ozimals' hope and not an accusation against Amaretto. Ironically, Amaretto's rush to the courthouse publicized the then private dispute between Ozimals, Inc. and Amaretto. Amaretto filed the instant Action on December 15, 2010 and attached many of the documents that Amaretto complains are defamatory. Since Amaretto made the dispute public, Ozimals, Inc. began fielding questions about the lawsuit, and thus, the blog was born to respond to those questions. *See* Defs.' Exh. F, first line ("We've been asked about the injunction and lawsuit filed in California against Ozimals, Inc. by Amaretto Ranch Breedables, L.L.C."); *see also,* Complaint filed December 15, 2010 [D.E. 1]; Pltf.'s Opp., at 7:21-24 (admitting it filed the Complaint before the blog).[3]

There are several other inaccurate statements made by Amaretto in their Opposition. Ozimals will discuss the relevant ones as necessary below. Defendants do not concede the validity of any of the so-called facts asserted by Amaretto and fully reserve their right to challenge any and all so-called facts at trial if need be. However, it is not necessary to completely address all of

---

[3] Another example of Amaretto's inaccurate statement is its repeated reference to "both experts" agreeing that Amaretto did not copy Ozimals' code. First, Ozimals, Inc. has not ever claimed that Amaretto copied Ozimals' original source code. Yet, Amaretto continues to make this misstatement of fact in its filings. As already discussed and quoted in the context of the copyright motion for summary judgment, Ozimals, Inc.'s expert found that Amaretto's expression of breedable horses was substantially similar after Amaretto had access to Ozimals, Inc.'s game.

1  Amaretto's inaccurate statements in this Reply because the relevant indisputable facts make clear
2  that summary judgment is proper.
3        The bottom line is that even Amaretto, prior to the exchange of cease and desist letters,
4  raised a concern over their expression of a breedable animal when one of its developers contacted
5  Ozimals about the copyright. This is strong evidence that, at the time of the cease and desist letter
6  and blog post, even Amaretto believed that the comments contained therein may be true.

7  **III.  AMARETTO'S DEFAMATION ANALYSIS IS INSUFFICIENT**

8        Amaretto's Opposition primarily focuses on its Fourth Cause of Action for defamation.
9  Amaretto's analysis is unsupported for various reasons discussed below. As an initial matter, the
10 cases relied upon by Amaretto are distinguishable. Amaretto relies on the inapposite case of
11 *Hawran v. Hixson*, 209 Cal. App. 4th 256 (2012)—an anti-SLAPP case. In *Hawran*, plaintiff only
12 needed to establish a prima facie case in order for the case to proceed and did not have to raise
13 triable issues of material fact. *Id.* at 290 and 293. Factually, *Hawran* involved an extremely fact-
14 specific analysis that is different from the case at bar. The relevant statements in *Hawran* were
15 "that Sequenom 'has obtained the resignation of ... Paul Hawran ....'; that each of 'these officers
16 and employees,' including Hawran, has 'denied wrongdoing'; and that the SLC investigation has
17 raised serious concerns 'resulting in a loss of confidence [in the personnel involved] by the
18 independent members of the company's board of director.'" *Id.* at 291-292. There are no such
19 reasonably analogous statements in this case. The *Hawran* holding was also narrowly focused:
20 "Further, the statements are made in a press release that was intended to supplement mandatory
21 SEC disclosures. Such formalized statements in press releases are usually intended to be factual, as
22 opposed to rhetorical, persuasive, or evaluative." *Id.* at 292. Here, there was no formalized press
23 release intended to supplement mandatory SEC disclosures. Instead, the relevant statements were
24 made in informal blog postings unrelated to any kind of mandatory disclosure. By its very nature,
25 a blog post is more rhetorical in nature and allows for commentary on the topic.
26       Indeed, *Hawran* actually supports Defendants' argument in that the *Hawran* court expressly
27 contrasted the formal press release in that case with the disputed statements in *Global Telemedia*
28 *Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001), and noted that the *Global*



1  *Telemedia* "**postings on an Internet** message board were 'full of hyperbole, invective, short-hand phrases and language **not generally found in fact-based documents, such as corporate press releases or SEC filings**' and thus lacked '**the formality and polish typically found in documents in which a reader would expect to find facts.**'" *Hawran*, 209 Cal. App. 4th, at 292 (emphasis added).  The disputed blog in this case is directly analogous to the *Global Telemedia* postings on the Internet as they too are filled with opinion, hyperbole, and lack formal polish.  Like the *Global Telemedia* postings, the statements in this case are not actionable under the totality of the circumstances.

Amaretto also cites to *Art of Living Foundation v. Does*, 2011 WL 2441898 (N.D.Cal. 2011).  As the Defendants' opening papers demonstrated, *Art of Living Foundation* actually supports summary judgment.  Of particular importance is the holding "In the broad context, the statements are made on **obviously critical blogs** ("Leaving Art of Living" and "Beyond Art of Living") with **heated discussion and criticism** of the Art of Living Foundation and Ravi Shankar.  In this context, readers are less likely to view statements as assertions of fact rather than opinion." *Id*. at *5.  The blog in the case at bar was not critical, but clearly was an opinion which, pursuant to *Art of Living*, makes summary judgment even more proper in this case.  Amaretto also cites to *Underwager v. Channel 9 Australia*, 69 F. 3d 361 (9th Cir. 1995).  As an initial matter, *Underwager* did not involve a blog posting or other Internet activity.  Nevertheless, *Underwager* involved a summary judgment in favor of a defamation defendant.  For example, the *Underwager* court held that " the term "lying" applies to a spectrum of untruths including "white lies," "partial truths," "misinterpretation," and "deception." As a result, the statement is no more than nonactionable "rhetorical hyperbole, a vigorous epithet used by those who considered [the appellant's] position extremely unreasonable." *Underwager*, 69 F. 3d, at 367 (citations omitted).

The implication is clear: the Ninth Circuit properly exercises great caution before allowing a defamation plaintiff to impinge on a defendant's right to free speech.  Such defendants are given considerable leeway to engage in non-actionable hyperbole.  Simply because Amaretto does not like the statements or agree with them, does not make those statements actionable defamation.

Amaretto cites to *MacLeod v. Tribune Pub. Co.*, 52 Cal. 2d 536 (1959) which was at the demurrer, rather than the summary judgment stage, procedurally. It is a 1959 case involving a newspaper and did not involve blog postings like this case. *Id.* at 542-543. The allegedly defamatory statement at issue in *Macleod* (that charged another with membership in the Communist Party/affiliation/sympathy) is obviously not applicable to this case. *Id.* at 546. There is no such charge of membership in the Communist Party or affiliation made in the blog post by Ozimals, Inc.

### A. The Heated Debate Argument Is Erroneous

Amaretto's "heated debate" analysis is filled with erroneous and/or unsupported statements. Amaretto does not cite to any legal authority when it erroneously states that "The format of the Article is directly akin to a press release." Opp., at 12:8-9. First, the attempt by Amaretto to transform a blog post into a "press release" is a tacit admission that if it is not "akin to a press release" the blog post is not actionable. Second, this argument ignores that the very nature of a blog post vis à vis a press release is vastly different. As discussed earlier, under cases like *Hawran* and *Global Telemedia*, the disputed blog postings are completely different from a press release. *Hawran*, 209 Cal. App. 4th, at 292 (emphasis added).

Amaretto also tries to create (without sufficient legal support) a requirement that both sides must have somehow weighed in on the controversy in the disputed publication before the disputed blog posts become non-actionable. Opp., at 12:14-22. Amaretto appears to cite to the *Underwager* case as support because supposedly *Underwager* involved "statements made during workshop included speakers on both sides of heated debate." Opp., at 12:14-22. Whether a plaintiff chooses to weigh in on a blog post or not is not an element of a defamation cause of action. If it were, it would lead to absurd results and manufactured defamation cases because a defamation plaintiff could choose not to comment on a blog post it did not agree with or like in order to create a defamation cause of action. There is no indication that the plaintiff in *Underwager* participated in the relevant "San Diego Conference" (or what specific debate occurred there, if any) and *Underwager* certainly did not mandate such participation by the plaintiff or counter-arguments. *Id.* at 364.

Similarly, the *Art of Living Foundation* case does not somehow require "a forum for the exchange of opinions on both sides of an issue." That phrase does not appear anywhere in *Art of Living Foundation*. Again, the key holding actually is that blog readers are less likely to view statements as assertions of fact rather than opinion. *Id.* at *5 (emphasis added). *Art of Living Foundation* does not hold that a blog must somehow provide "equal time" to the plaintiff in order to be non-actionable. Similarly, *Nicosia v. DeRooy*, 72 F. Supp. 2d 1093, 1101-02 (N.D. Cal. 1999) merely considered plaintiff's participation as a factor to consider but does not hold that it as a requirement.

Of course, Amaretto conspicuously fails to explain why **Amaretto** did not take advantage of this comment function to provide Amaretto's version of the dispute. Amaretto has **provided no evidence** that it was somehow prevented from uploading its side of the story into the comment section. Amaretto's claim that "Amaretto had no voice whatsoever in the Article" appears inaccurate—especially when it filed the Complaint in this Action before the blog. So, in that sense, the blog actually responds to Amaretto's volley. Amaretto's rush to the courthouse in California created the need for Ozimals, Inc. to respond to the questions posed to it by its customers in Second Life. Indeed, the fact that there were others commenting on the blog supports Defendants' argument that the blog is simply commentary and statements of opinion (i.e. not actionable defamation).

**B.    The Disputed Blog Contained Opinion Which Was Not Provably False**

The case of *Ruiz v. Harbor View Community Ass'n*, 134 Cal. App. 4th 1456 (2005), another anti-SLAPP case, is distinguishable because it did not involve Internet postings. *Id.* at 1460. Similarly, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) is distinguishable because it involved Ohio's libel laws and a newspaper publication which, as set forth above, are markedly different in character than blogs. *Id.*

Instead, given the judicial recognition in *Art of Living Foundation* and *Hawran* that readers are much less likely to view informal Internet postings as assertions of fact, a better approach to analyzing whether the disputed statements were allegedly "provably false" is reflected by the non-Internet case *Underwager* and should be adopted here in the Internet context. Again, *Underwager*

did not focus narrowly on whether the term "lying" was technically a verifiable assertion of perjury, but instead recognized the term applied to a spectrum of possible meanings which included non-actionable hyperbole. That same leeway and deference to Ozimals, Inc.'s free speech rights by way of allowing hyperbole applies here.

Amaretto only accuses the Defendants of making statements about three specific items that are allegedly "provably false." First, it makes the accusation that "Ozimals is not, nor has it ever been, the 'owner' of the copyright in the bunnies (to the extent there is one) – and Defendants knew it before they posted the Article." Opp., 14:22-23. This accusation does not defeat summary judgment for a number of reasons. As an initial matter, Amaretto does not provide specific citations to the record to support this accusation and there is no evidence the disputed blog postings use the language "owner of the copyright in the bunnies" or anything sufficiently similar. This first accusation is also irrelevant because it is not defamatory as to Amaretto. CACI Jury Instruction No. 1704 states in part that the second liability element is "2. That [this person/these people] reasonably understood that the statement(s) [was/were] about [name of plaintiff]; ...." No person could reasonably understand that an alleged statement about **Ozimals'** ownership of a copyright could be about **Amaretto**. There is **no evidence** that Ozimals, Inc. believed, knew, or should have known that it did not "own" a copyright in the Ninth Circuit at the time of the blog posting. Indeed, Ozimals could very well still be an owner in any other circuit, but the Ninth. Since the owners of Ozimals, Inc. are not residents in the Ninth Circuit, it was reasonable for them to believe that their transfer of their rights in the copyright to Ozimals, Inc. was a transfer of their "ownership rights."[4] It was not until years later that this Court disagreed with this proposition. Nevertheless, this Court's ruling regarding Ozimals, Inc.'s lack of standing in the Ninth Circuit is irrelevant as to the blog. There is no dispute that the blog was published long before the Court's November 5, 2012 ruling. Therefore, any alleged claim of ownership in the blog was not provably false **at the**

---

[4] Of course, this ignores the fact that, based on this Court's ruling, Candace Sargent and Cameron Holt remain co-owners of the copyright with Mr. Distelhurst because this Court believed Ozimals, Inc. to be a licensee of Ms. Sargent and Mr. Holt with regard to the copyright. This Court's summary judgment ruling does not and did not negate the validity of the copyright or Ms. Sargent's and Mr. Holt's ownership interest in the copyright.



**time of publication** and none of the Defendants could have failed to use reasonable care to determine the truth or falsity of the statements (*see e.g.* CACI No. 1704, fourth liability element).

Furthermore, Amaretto relies heavily on deposition excerpts attached as Exhibit F to the Kearns Declaration. Conveniently, Amaretto omits the testimony just prior to the portion attached wherein Ms. Sargent testifies that she believed that Ozimals, Inc. was a co-owner of the copyright: "Q. The supposed owner that is referred to in this DM -- DMCA notice is Ozimals, Inc.; is that right? A. Ozimals, Inc. is an owner of the copyright, yes." *See* McCliman Dec., at ¶ 2 and Exh. M, at 100:18-22. Thus, even as late as June 1, 2011 (the date of her deposition), Ms. Sargent believed that Ozimals, Inc. was an owner of the copyright. This explains Amaretto's failure to show that Ozimals, Inc. knew or should have known at the time of the blog post that it was not an owner—because Ozimals, Inc. reasonably believed that it had an ownership interest in the copyright. This Court disagreed, but did not invalidate the copyright or rule as to whether Ms. Sargent and Mr. Holt were not owners of the copyright (that issue was not before this Court at the time).

Even if the blog somehow included a claim of ownership, such a claim would be non-actionable hyperbole. As discussed earlier, the *Underwager* case indicates that the Ninth Circuit does not take a narrow technical interpretation of allegedly defamatory terms but instead recognizes such terms should be interpreted as having a spectrum of meanings, some of which may be non-actionable. Especially as to informal blog postings like the one in this case, any alleged statement by the Defendants that Ozimals, Inc. was the "owner" of the copyright should not be narrowly interpreted under a hyper-technical analysis of whether Ozimals, Inc. was a non-exclusive licensee in the Ninth Circuit. Instead, the analysis should reflect that the term "owner" encompasses a spectrum of potential meanings, especially given that a lay person was using the term. Under such an analysis, "owner" hyperbolically includes non-exclusive licensees who indisputably do have some interest in the copyright, and thus, the disputed statement would be non-actionable.

As the court held in *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515 (2006): "[A]n opinion or **legal conclusion** is actionable only if it could reasonably be understood as declaring or implying actual facts capable of being proved true or false. . . .An



opinion is not actionable if it discloses all the statements of fact on which the opinion is based and those statements are true." *Id.* at 527 (internal citations and quotations omitted, emphasis added). Amaretto is simply arguing that the blog included a legal conclusion about copyright standing. That is not enough to support defamation. Amaretto must also show that there was "no factual basis for the opinion." It has not and cannot do so. Amaretto merely relies on this Court's ruling two years after the fact. Such "evidence" does not indicate in any way that, at the time of the blog post, Ozimals, Inc. knew it did not have standing in the Ninth Circuit. There is no requirement in the law that persons writing blog posts be seers. Amaretto has not and cannot show that any legal opinion about copyright standing was based on facts that were provably false, at the time.

Amaretto also makes the accusation "Third, the 'traits' and other elements of the bunnies and the 'game concept' outlined in the Article, Cease & Desist Letter, and Chat Log are not capable of copyright protection ...." Opposition, at 15:23-26. Amaretto again fails to provide any specific citations to the record to support this accusation and it is unclear what statement or statements they are referring to, let alone that such a statement is actually false. The blog actually makes clear that Ozimals, Inc. believed that it had a copyright in the expression of its game, not the "concept" of a breedable animal in Second Life. Thus, the facts do not support Amaretto's accusation.

Furthermore, there indisputably has never been any kind of ruling as to the validity of the copyright. Amaretto merely describes in its Opposition how it disagrees with Ozimals' copyrightability analysis and claims that Amaretto can make its case at trial. Even if the blog somehow included a claim of copyrightability, it would be non-actionable, especially given the informality of blog postings like the ones in this case. Again, *Underwager* indicates the Ninth Circuit gives generous leeway to defamation defendants as to hyperbole. Such generous leeway precludes defamation liability in this case. And again, under *Integrated Healthcare Holdings*, it is not enough to assert defamation simply on disagreement over a legal conclusion or opinion drawn by a defendant. Amaretto is simply arguing that the blog postings included a legal conclusion about copyrightability that Amaretto disputes. Again, to reach the level of defamation, according to *Underwager* Amaretto must show that there was "no factual basis for the opinion." Amaretto has

1 not and cannot show that any legal opinion about copyrightability was based on facts that are
2 provably false because they were clearly based, in part, on the advice of counsel.

3 Finally, Amaretto argues "Second, Ozimals' claim (or inference) that Amaretto copied the
4 bunny code was reckless" and relies on the expert analysis of source code exchanged during
5 discovery—**after Amaretto sued and after the posting of the blog**. There is no indication in the
6 record that Ozimals, Inc. made any such claim or inference about source code in its blog post or
7 cease and desist letter, and it is irrelevant when Ozimals had access to Amaretto's code for
8 purposes of Amaretto's defamation claim. For example, Ozimals, Inc.'s November 2, 2010 cease
9 and desist letter merely noted striking similarities such as "Identical set of genetic traits that vary in
10 nearly identical ways," "Identical settings and configurations that can be altered in nearly identical
11 ways," and "Identical expressions of functionality." Amaretto's Opposition is conspicuously silent
12 as to these striking similarities. It is an absurd leap in logic to argue that such statements
13 reasonably equate to statements about copied computer code. And at most, Ozimals, Inc.'s
14 statements would be non-actionable hyperbole under cases like *Underwager*. Alternatively,
15 Amaretto is merely disagreeing with Ozimals, Inc.'s legal opinion about whether copying occurred
16 but has not shown that there was "no factual basis for the opinion."

### C. Amaretto's Damages Analysis Is Irrelevant

18 Amaretto's damages analysis is extraneous and unnecessary. As Amaretto admits, damages
19 are not at issue on summary judgment. It was not necessary to address damages as there are many
20 other reasons to grant summary judgment. Again, Amaretto makes a completely (and knowingly)
21 false statement when it says that "Defendants do not dispute that Amaretto has been damaged as a
22 result of the defamatory statements. Nor could they. The statements at issue are defamatory per se."
23 Pltf.'s Opp, at 18:1-3. First, and most glaringly, Defendants did not discuss the damages issue in
24 light of the fact that there are so many other reasons for granting this Motion for Summary
25 Judgment. The only discussions of damages are to show that they are an element of Plaintiff's
26 claims and/or not recoverable pursuant to the Unfair Competition statute. Second, the moving
27 papers point out how Amaretto's Second Amended Complaint sets forth a knowingly false
28 allegation regarding damages. Third, one important premise of Defendants' Motion is that the

statements at issue are **not actionable or defamatory**. Amaretto's statement above is devoid of any factual reality. Defendants will address the damages issue at trial, if need be.

    **D.    The Litigation Privilege Applies To Blog**

The Court made a very narrow ruling as to whether the litigation privilege applies to the disputed blog postings. That ruling, in relevant part, relied on Amaretto's allegations as pled. Amaretto still argues that "Ozimals' statements were made to persons not connected in any way to the litigation at hand, and were not intended to achieve the objects of litigation." Opp., at 18:1-3. Yet, the blog itself indicates that it is posted in response to questions posed about the **pending Amaretto-initiated** litigation or who would have similar interest in the litigation. For example, the disputed blog posting begins in part with the statements "We've been asked about the injunction and lawsuit filed in California against Ozimals Inc. by Amaretto Ranch Breedables LLC" and "The Ozimals team would like to take a moment to address your questions and explain the reasons behind the steps we have taken." The blog was made to persons connected to the litigation. More specifically, the disputed publications were made to people who actually had questions about and/or would have been interested in learning about the litigation **that Amaretto initiated**. More specifically, the discovery discussed above also shows the disputed publications were intended to address accusations made in litigation **by Amaretto** in a case initiated by Amaretto.

Amaretto cites to various cases regarding statements to non-participants. None of the cases deal with blogs specifically targeted at addressing questions from interested people about litigation that the supposedly defamed party initiated (and some do not involve summary judgment after discovery). *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1138-1139 (1996) (demurrer case, no indication that interested people first raised questions); *Financial Corp. of America v. Wilburn*, 189 Cal. App. 3d 764, 768-770 (1987) (demurrer case, no indication that interested people first raised questions); *Susan A. v. County of Sonoma*, 2 Cal. App. 4th 88, 93-94 (1991) (publications addressed to press not customers); *Copp v. Paxton*, 45 Cal. App. 4th 829, 839-44 (1996) (executive privilege case, not litigation privilege case); *Hawran v. Hixson*, 209 Cal. App. 4th 256, 262-267 (2012) (anti-SLAPP case, indication press release was in response to questions).

1  As a general principle, "The [litigation] privilege is denied to any participant in legal
2  proceedings only if the matter is so palpably irrelevant to the subject matter of the controversy that
3  no resonable [sic] can doubt its irrelevancy and impropriety." *Loomis v. Sup.Ct. (Murphy)*, 195
4  Cal. App. 3d 1026, 1030 (1987) (citations/quotations omitted). Under this very broad and generous
5  standard, the blog is sufficiently relevant and proper so that the litigation privilege applies.

## IV. AMARETTO'S TRADE LIBEL ANALYSIS IS INSUFFICIENT

As to trade libel, Amaretto essentially repeats its defamation analysis in an attempt to establish a false statement. It again incorrectly claims that various statements were "false" and not opinions. The previous section shows the fallacy of these arguments. Amaretto also makes the accusation that "Defendants intentionally published the statements during the important holiday season for the purpose of inducing customers to not deal with Amaretto, a question the jury must decide." It provides no citation to evidence to support this accusation. In fact, Amaretto was responsible for the timing since it filed the instant Action the day before and attached the cease and desist letters and DMCA notices thereby setting into motion a series of inquiries from customers about its lawsuit. Amaretto cannot dispute that the timing of the blog was the result of its own actions.

Amaretto further argues that it can prove pecuniary loss because Ozimals allegedly induced others not to deal with Amaretto by merely claiming that coincidentally Amaretto's sales dropped the day after the date of the disputed blog postings and that it allegedly had to give away free food to keep Amaretto customers happy. Amaretto does not provide admissible evidence to support these specious allegations is telling. Amaretto merely cites to the inadmissible and incomplete expert report on damages, but provides no specific citations to underlying documents to support that expert report. It does not provide any evidence from its customers that they were induced not to deal with Amaretto because of Defendants allegedly wrongful conduct. Amaretto names no names, fails to specify any transactions, or provide admissible evidence of lost profits. More importantly and suspiciously, Amaretto's expert fails to consider other factors (Amaretto's filing of this Action and the "technical difficulties" experience with Amaretto's servers) which more than likely caused Amaretto's alleged pecuniary loss. She also does not consider the fact that Amaretto

1 gave away free food to appease customers because of Amaretto's technical difficulties and that is
2 why there was a drop off in sales for the time periods referenced—especially the time period that
3 was several weeks after the initiation of this Action by Amaretto or the blog. *See* Defs.' Exhs. G
4 and H. The failure to consider these facts makes her findings and opinion untrustworthy.

5 "[It] is not enough to show a general decline in . . . business resulting from the falsehood,
6 even where no other cause for it is apparent, and that it is only the loss of specific sales that can be
7 recovered. This means, in the usual case, that the plaintiff must identify the particular purchasers
8 who have refrained from dealing with him, and specify the transactions of which he claims to have
9 been deprived." *Erich v. Etner*, 224 Cal. App. 2d 69, 73-74 (1964) (internal citations and
10 quotations omitted). Amaretto failed to provide any evidence of a specific loss of customers or
11 transactions.

## V. AMARETTO'S INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE ANALYSIS FAILS

14 Amaretto claims that it can establish the required element that the defendant must have
15 knowledge of the economic relationships that were allegedly interfered with. However, Amaretto
16 has not provided any admissible evidence showing this. It is irrelevant that Ozimals, Inc.'s
17 revenues may or may not have decreased when Amaretto entered the market. There is no
18 deposition testimony (or other admissible evidence) that any of the Defendants had sufficient
19 knowledge of any relevant relationship involving Amaretto.

20 Amaretto also claims it can establish the required element of intentional acts on the part of
21 the defendant designed to disrupt the relationship. It essentially incorporates by reference its earlier
22 defamation analysis and claims that false statements were knowingly made. As set forth above, the
23 allegedly defamatory statements are not actionable. Thus, Amaretto cannot satisfy the third
24 element of the tort of interference with prospective economic advantage which also requires a
25 plaintiff to plead and prove intentional and independently wrongful acts on the part of the
26 defendant designed to disrupt the relationship. *Marsh v. Anesthesia Service Medical Group, Inc.*,
27 200 Cal. App. 4th 480, 504 (2011).

1   Amaretto also repeats the unsupported argument that the Defendants somehow intentionally
2   published the statements during the important holiday season for the purpose of inducing customers
3   to not deal with Amaretto. Yet, Amaretto omits the fact that it picked the date by filing the lawsuit.
4   Again, Amaretto merely cites to the inadmissible and incomplete expert report. Amaretto fails to
5   provide citations to underlying documents to support that expert report, does not provide any
6   customer testimony that any customers were affected, does not provide citations to documents
7   showing that customers were induced not to deal with Amaretto, etc. These evidentiary failures are
8   telling. Finally, Amaretto incorporates by reference its unfair competition analysis. However, the
9   unfair competition analysis also fails as discussed below.

## VI. AMARETTO'S UNFAIR COMPETITION ANALYSIS IS NOT SUFFICIENT TO DEFEAT SUMMARY JUDGMENT

As an initial matter, Amaretto admits that it is not entitled to many of its claimed damages items related to unfair competition. At the very least, summary judgment should be granted as to those improper damages items. Amaretto further claims that it can establish the "unlawful" prong of statutory unfair competition. It merely incorporates by reference its analysis for defamation and trade libel. As discussed earlier, both of those claims fail and thus cannot support the "unlawful" prong of an unfair competition claim. Likewise, as to the "fraud" prong, Amaretto essentially incorporates its defamation analysis. Amaretto also refers to three comments on the disputed blog supporting Ozimals. However, there is no evidence that these commenters were somehow "deceived" or even likely to have been deceived. They merely expressed opinions in support of Ozimals, Inc. Furthermore, Amaretto claims these comments show damage but fails to articulate how the free expression of opinion somehow cost Amaretto money so that restitution is in order.

Finally, as to the "unfair" prong, Amaretto attempts to establish unfair behavior by equating the alleged defamation related to copyright with incipient antitrust violations. It provides zero legal authority to support this theory and that defamation analysis has already been discredited. Amaretto also attempts to explain away powerful evidence that Amaretto was not forced to give away food because of alleged statements by Ozimals, Inc., but instead those giveaways were due to Amaretto's own server problems. Amaretto does not deny that the giveaways indeed were related

to Amaretto server problems. When faced with this evidence belying their claim, Amaretto pivots by claiming that the reference to "certain issues" in a document meant that the giveaway was also somehow due to the dispute with Ozimals. Notably, there is no testimony or other evidence supporting this new argument. Also, when read in context, it is clear that the "certain issues" have nothing to do with Ozimals. To wit, the phrase reads: "... issues that keep coming up **on both our [Amaretto's] end and the normal Second Life issues that we can do nothing about.**" (emphasis added).

Amaretto then argues that an alleged dip in Amaretto sales was somehow due to actions by Ozimals, Inc. and therefore Amaretto can show an antitrust "restraint on trade." It does not cite to admissible evidence to support this position as it once again merely refers to its inadmissible and unreliable expert report on damages and not to admissible testimony, documents, etc. Amaretto also provides no legal authority to support this position. According to Black's Law Dictionary, a "restraint of trade" in the antitrust context is "2. <u>Antitrust</u>. An agreement between two or more businesses or a combination of businesses intended to eliminate competition, create a monopoly, artificially raise prices, or otherwise adversely affect the free market." GARNER, BLACK'S LAW DICTIONARY, p. 1429 (9th ed.). This case clearly does not involve such an agreement between two or more businesses.

### VII.   CONCLUSION

For the foregoing reasons and those set forth in the moving papers, Defendants respectfully request that Court grant their Motion in its entirety, or in the alternative summarily adjudicate the Second, Fourth, Fifth, and/or Seventh Causes of Action in favor of Defendants and against Plaintiff Amaretto.

Respectfully submitted,

Dated: April 17, 2013          **McCLIMAN LAW FIRM, APC**

By: /Michelle M. McCliman/
Michelle M. McCliman
Attorneys for Defendants Ozimals, Inc.,
Candace Sargent, Cameron Holt, and
Creative Acorn Studio

